UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Anthony Griffin,<br><br>　　　　　　Plaintiff,<br><br>　　-against-<br><br>The City of New York; Ramu Hiller, in his individual capacity; Michael Calloway, in his individual capacity; Undercover Detective C0014, in his or her individual capacity; Undercover Officer C0076, in his or her individual capacity; John and Jane Does 1 through 4, each in his or her individual capacity,<br><br>　　　　　　Defendants | ECF CASE<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>13 Civ. 2773 (AKH) |

**PRELIMINARY STATEMENT**

1.　　This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 for the Defendants' commissions of acts under color of law in violation of Plaintiff's rights under the Fourth, Sixth and Fourteenth Amendments to the Constitution of the United States and the laws of the State of New York.

**JURISDICTION**

2.　　This action arises under the Fourth, Sixth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

3.　　Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 and 1367.

**VENUE**

4.　　Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that, *inter alia*, the events giving rise to the claim occurred in the Southern District of New York.

**JURY DEMAND**

5.  The Plaintiff demands a trial by jury on each and every one of his claims as pled herein.

**PARTIES**

6.  Plaintiff Anthony Griffin is a resident of New York.

7.  Defendant the City of New York (the "City") is a municipal corporation within the State of New York.

8.  The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court.  At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel.  In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitutions and laws of the United States and of the State of New York.

9.  At all relevant times herein, defendants Ramu Hiller, Michael Calloway, Undercover Detective C0014, Undercover Officer C0076, and John and Jane Does 1 through 4 (the "Individual Defendants"), were employed by the NYPD and were acting in the capacity of agent, servant, and employee of the City.

10.  At all times relevant herein, Ramu Hiller held the rank of detective and had shield number 362.

11.  At all times relevant herein, Michael Calloway held the rank of detective and had shield number 4574.

12. The Individual Defendants were members of a "team" assigned to the NYPD's Narcotic Borough Manhattan North.

13. At all times relevant herein, the Individual Defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the City and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. The Individual Defendants were acting for and on behalf of the City at all times relevant herein with the power and authority vested in them as officers, agents and employee of the City and incidental to the lawful pursuit of their duties as officers, employees and agents of the City.

### STATEMENT OF FACTS

14. In the evening of December 20, 2011, at approximately 5:50 PM, plaintiff Anthony Griffin was arrested by several of the Individual Defendants while he was standing on the sidewalk with his brother and a friend in the vicinity of 267 and 269 West 114th Street in Manhattan.

15. Mr. Griffin was placed in a police van. Two other men and a woman named Ruth Bennette were already in the van.

16. At the time Mr. Griffin was placed in the van, Ms. Bennette had been there for approximately twenty minutes.

17. After approximately ten minutes of Mr. Griffin being placed in the van and driven around, the police arrested a man named Xavier Jackson in a different location and placed him in the van.

18. After a detour to the NYPD's 24th Precinct, Mr. Griffin and the other arrestees were eventually taken to the 30th Precinct.

19. At the 30th Precinct, two of the Individual Defendants subjected Mr. Griffin to a

humiliating and degrading strip and visual body cavity search, in which he was forced against his will to take all his clothes off, squat, spread his buttocks and cough.

20. Mr. Griffin was eventually taken to Central Booking in Manhattan.

21. Mr. Griffin was brought before a judge and arraigned on a felony complaint (the "Felony Complaint") which charged him with Criminal Sale of a Controlled Substance in the Third Degree (New York Penal Law § 220.39(1)), and Criminal Sale of a Controlled Substance on or Near School Grounds (New York Penal Law § 220449(2)), both class "B" felonies.

22. In the Felony Complaint, Detective Hiller, who was designated as the arresting officer, stated that he was informed by Undercover Detective C0014 that the latter observed Mr. Griffin and Xavier Jackson "acting in concert, hand separately charged Ruth Bennette crack cocaine in exchange for U.S. currency."

23. On information and belief, based on the New York District Attorney's Voluntary Disclosure Form prepared by Assistant District Attorney Craig Ascher, and the questions asked of Mr. Griffin by ADA Ascher in the grand jury, Detective Hiller and/or other of the Individual Defendants told ADA Ascher that they observed Mr. Griffin selling drugs on West 114th Street between Seventh and Eighth Avenues.

24. Any information provided by to ADA Ascher or other prosecutor(s) by Detective Hiller and/or other of the Individual Defendants implicating Mr. Griffin in the sale of drugs to Ms. Bennette was false.

25. Mr. Griffin was eventually arraigned on the Felony Complaint in the Criminal Court of the City of New York City, County of New York.

26. Bail was set and the matter was adjourned for grand jury action.

27. Unable to make bail right away, Mr. Griffin remained incarcerated until January 18,

2012.

28. At some point prior to his release Mr. Griffin was indicted.

29. The indictment was based on the false statements and perjured testimony of one or more of the Individual Defendants.

30. On or about December 18, 2012, after more than a dozen court appearances, Mr. Griffin's case was dismissed and sealed.

31. Mr. Griffin neither possessed nor sold crack cocaine or any other controlled substance on December 20, 2011.

32. In the Felony Complaint, Detective Hiller does not allege that Mr. Griffin had any controlled substance on his person when he was arrested, but rather that he was observed handing something which Undercover Detective C0014 believed to be a controlled substance to Ruth Bennette in exchange for what he believed to be currency. Detective Hiller further states that he "recovered two bags of crack cocaine from [Ruth] Bennette."

33. In the Felony Complaint Detective Hiller alleges that the drug sale took place "at about 17:45 hours [in the] vicinity of [West] 114th Street and Eighth Avenue."

34. Detective Hiller was also the arresting officer of Ruth Bennette and swore out a misdemeanor complaint in her case charging her with Criminal Possession of a Controlled Substance in the Seventh Degree (New York Penal Law § 220.03) and stating that he recovered crack cocaine from her left pants pocket.

35. In the complaint against Ms. Bennette, Detective Hiller gives the time and place of occurrence as "at about 17:25 hours at the corner of 8th Avenue and West 116th Street."

36. Court documents show Ms. Bennette's official arrest time as being 5:30 PM, thus establishing that she was in police custody for at least 15, and probably 20, minutes prior to the time

that Mr. Griffin was alleged to have sold drugs to her.

37. Video surveillance from the apartment building on the corner of West 114th Street and Eighth Avenue shows Ms. Bennette turning off of West 114th Street and north on Eighth Avenue at approximately 5:25 PM.  Approximately one minute later, it shows Mr. Griffin walking in the opposite direction, toward the area where he was arrested and where he was alleged to have sold drugs to Ms. Bennette nineteen minutes later.

38. The NYPD has a formal policy, contained in its Patrol Guide, by which it authorizes strip searches only in situations where "the arresting officer reasonably suspects that weapons, contraband, or evidence may be concealed upon the person or in the clothing in such a manner that they may not be discovered by the previous search methods. Other factors that should be considered in determining the necessity for a strip search include, the nature of the crime (serious violent felony), arrest circumstances, subject's reputation (extremely violent person), act of violence, and discoveries from previous searches." Additionally, an NYPD directive, limiting and clarifying the strip search policy, was issued on May 13, 2004.

39. This notwithstanding, on information and belief, the NYPD has, and had at the time of the incident giving rise to this Compliant, a *de facto* policy and practice of strip-searching persons for reasons other than those specified in the Patrol Guide or NYPD directives.

## NOTICE OF CLAIM

40. On March 14, 2013, within 90 days from the date the malicious prosecution claim alleged in this Complaint arose, a Notice of Claim was served on the City.

41. At least 30 days have elapsed since the service of that Notice of Claim and adjustment or payment thereof has been neglected or refused.

42. The instant lawsuit is instituted within one year and 90 days after the date the

malicious prosecution claim alleged in this Complaint arose.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C.§ 1983 Against the Individual Defendants

43.   All other paragraphs herein are incorporated by reference as though fully set forth.

44.   The aforementioned acts deprived plaintiff of the rights, privileges and immunities guaranteed by the Fourth, Sixth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

45.   The acts complained of were carried out by the Individual Defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

46.   The acts complained of were carried out by the Individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City and the NYPD, all under the supervision of ranking officers of said department.

47.   The Individual Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

48.   The Individual Defendants' conduct was the proximate cause of the injuries and damages sustained by plaintiff.

### SECOND CAUSE OF ACTION
### False Arrest under 42 U.S.C. § 1983
### Against the Individual Defendants

49.   All other paragraphs herein are incorporated by reference as though fully set forth.

50.   By intentionally confining, arresting, imprisoning and detaining plaintiff without probable cause, privilege or consent, the Individual Defendants engaged under color of law in the

violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to be free from unreasonable seizures, false arrest and imprisonment.

### THIRD CAUSE OF ACTION
### Unlawful Search under 42 U.S.C. § 1983
### Against the Individual Defendants

51.     All other paragraphs herein are incorporated by reference as though fully set forth.

52.     By strip searching and performing a visual body cavity search of plaintiff in the absence of any individualized reasonable suspicion he was concealing weapons or contraband, the Individual Defendants engaged under color of law in the violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to be free from unreasonable searches.

### FOURTH CAUSE OF ACTION
### Malicious Prosecution under 42 U.S.C. § 1983
### Against the Individual Defendants

53.     All other paragraphs herein are incorporated by reference as though fully set forth.

54.     In initiating the criminal proceedings against plaintiff with malice and without probable cause to believe the proceeding, which were terminated in plaintiff's favor, could succeed, the Individual Defendants engaged under color of law in the violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to be free from malicious prosecution.

### FIFTH CAUSE OF ACTION
### Denial of Right to a Fair Trial under 42 U.S.C. § 1983
### Against the Individual Defendants

55.     All other paragraphs herein are incorporated by reference as though fully set forth.

56.     By providing false information and/or evidence to the New York County District

Attorney's office that was likely to influence a jury's decision, the Individual Defendants engaged under color of law in the violation of plaintiff's right to a fair trial under the Sixth Amendment to the United States Constitution and 42 U.S.C. § 1983.

### SIXTH CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the City of New York

57.     All other paragraphs herein are incorporated by reference as though fully set forth.

58.     Municipal liability for the violations of plaintiff's Fourth and Fourteenth Amendment rights rests upon the grounds set forth below.

59.     At all times material to this complaint, the defendant City, acting through the NYPD and the Individual Defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

60.     At all times material to this complaint, the defendant City, acting through the NYPD and the Individual Defendants, had *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees and police officers, and of failing to inform the Individual Defendants supervisors of their need to train, screen, supervise or discipline said defendants. The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

### SEVENTH CAUSE OF ACTION
### Pendant State Law Claim for
### Malicious Prosecution
### Against all Defendants

61.     All other paragraphs herein are incorporated by reference as though fully set forth.

62.     By the actions described above, the Individual Defendants, jointly and severally, violated the Plaintiff's rights under New York law to be free from malicious prosecution, as a direct and proximate result of which the plaintiff suffered continued damage in his attempt to clear himself

from the false and maliciously imposed charges.

63. Municipal liability rest upon principles of *respondeat superior*.

WHEREFORE, the plaintiff requests that this Court:

1. Assume jurisdiction over this matter;

2. Award compensatory and punitive damages to plaintiff against the defendants, jointly and severally;

3. Award plaintiff reasonable costs, disbursements and attorneys fees; and

4. Grant any other relief the Court deems appropriate.

Dated:  New York, New York
April 24, 2013

Respectfully submitted,

Darius Wadia, L.L.C.

/s/
_____
By:  Darius Wadia (Bar number DW8679)
Attorney for Plaintiff
233 Broadway, Suite 2208
New York, New York  10279
dwadia@wadialaw.com
(212) 233-1212